c

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| CAM LOGISTICS, L.L.C., Plaintiff | CIVIL ACTION NO. 1:20-CV-00445 |
| VERSUS | JUDGE DRELL |
| PRATT INDUSTRIES, INC., *ET AL.,* Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## AMENDED REPORT AND RECOMMENDATION

Before the Court are the following opposed motions: (1) a Motion to Dismiss for Lack of Jurisdiction, Motion to Transfer ("Motion to Dismiss") (ECF No. 15) filed by Defendants Pratt Industries, Inc. ("Pratt Industries"), Pratt (Rockwall Corrugating), L.L.C. ("Rockwall") (collectively, "Defendants"); and (2) a Motion for Leave to File First Amended Complaint ("Motion to Amend") (ECF No. 38) filed by Plaintiff CAM Logistics, L.L.C. ("CAM"). Defendants seek dismissal for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim for relief. ECF No. 15-1. Alternatively, Defendants seek to transfer venue under 28 U.S.C. § 1404(a). *Id.* CAM opposes (ECF No. 27) and seeks to amend (ECF No. 38) its Complaint (ECF No. 1) to "correct misstatements" and more fully set forth underlying facts.

Defendants' Motion to Dismiss (ECF No. 15) should be DENIED IN PART and GRANTED IN PART. The Court lacks general personal jurisdiction over all Defendants. And the Court lacks specific personal jurisdiction over Pratt

Industries, Inc.. Thus, Defendants' Motion to Dismiss (ECF No. 15) should be GRANTED IN PART to the extent Defendants seek dismissal for lack of personal jurisdiction over Pratt Industries, Inc.

Because the Court has diversity jurisdiction; because the Court has specific personal jurisdiction over Rockwall only; and because venue is proper; Defendants' Motion to Dismiss (ECF No. 15) should be DENIED IN PART to the extent they assert lack of subject matter jurisdiction, lack of personal jurisdiction over Rockwall, and improper venue.

Because transfer to Delaware under 28 U.S.C. § 1404(a) is unwarranted, Defendants' alternative Motion to Transfer (ECF No. 15) should be DENIED.

And Because Louisiana choice of law rules and Louisiana law govern CAM's claims and CAM states plausible claims for breach of contract and detrimental reliance against Rockwall, Defendants' Motion to Dismiss (ECF No. 15) should be DENIED IN PART to the extent Defendants seek dismissal for failure to state a claim for relief.

Because CAM timely seeks to amend, because Defendants did not oppose, and because no relevant factors are present, CAM's Motion to Amend (ECF No. 38) should be GRANTED allowing CAM's proposed amendment (ECF No. 38-2).

## I.   Background

CAM filed a Complaint (ECF No. 1) for anticipatory breach of contract, or alternatively detrimental reliance, under this Court's diversity jurisdiction.  ECF No. 1.  CAM is a limited liability company (L.L.C.), whose sole member is Susan

Stedman, a domiciliary of Ohio. *Id.* at 1. CAM further alleges Defendant Pratt Industries is incorporated in Delaware, with its principal place of business in Georgia. *Id.* at 2. And Defendant Rockwall Corrugating is an L.L.C. whose sole member is Pratt Corrugated Holdings, Inc., which is incorporated in Delaware, with its principal place of business in Georgia. *Id.*

The dispute arises from an alleged breach of contract for warehousing services by CAM for Defendants. CAM is a business that specializes in supply chain services and solutions, including freight shipment and warehousing. *Id.* Pratt Industries is a corrugated packaging company and its subsidiary Rockwall Corrugating operates a facility in Rockwall, Texas that produces recycled paper and packaging. *Id.*

On October 23, 2017, Richard Turner ("Turner"), a representative of Defendants, and Patrick Shea ("Shea"), a representative of CAM, began discussions at a conference in Detroit, Michigan for warehousing services for Defendants. *Id.* CAM alleges Defendants wanted warehousing services in Central Louisiana for a three-year minimum term. *Id.* at 3. CAM asserts Defendants had recently received a contract from Proctor & Gamble Company ("P&G") and needed a local warehouse in Central Louisiana to ship its products. *Id.* In October of 2017, CAM informed Defendants it was interested in bidding on the three-year warehousing services contract. *Id.*

On October 24, 2017, Defendants sent details of its warehousing needs to CAM, advising that Defendants' new contract with P&G had an initial three-year

term of January 1, 2018 to December 31, 2020. *Id.* CAM alleges Defendants expected the warehousing services for that same term. *Id.*

To provide a bid for the contract, CAM priced elements for warehousing services, including a lease with a three-year term. *Id.* CAM sent its bid to Defendants on December 1, 2017, including the warehousing pricing. *Id.* at 4. CAM contends negotiations took place on the pricing, and after CAM lowered its pricing by five percent, Defendants accepted CAM's bid on December 6, 2017. *Id.*

On December 11, 2017, CAM sent a draft written agreement titled "Warehousing and Logistics Services Agreement" (the "Agreement") to Defendants. *Id.* As part of the bid and Agreement, prior to the award, CAM began discussions for a warehousing lease with a three-year term coinciding with the P&G contract. *Id.* at 5. CAM alleges Defendants assisted when issues arose in the lease negotiations. *Id.* at 5. Relying on the award and with Defendants' assistance, CAM avers it secured the warehousing lease in late 2017 with a term from January 1, 2018 to December 31, 2020. *Id.* at 6.

CAM alleges it discussed the status of the Agreement with Defendants' General Manager John Batts ("Batts") in late December 2017. *Id.* Batts advised it was with their legal group. *Id.*

While a written contract had not been entered, CAM asserts it began performance of the Agreement by providing warehousing services in January 2018. *Id.* CAM contends it invoiced Defendants, who paid the monthly invoices as contemplated under the Agreement. *Id.*

On February 13, 2018, Batts sent a draft of the Agreement to CAM with questions from their legal department, none relating to the essential terms. *Id.* On April 24, 2018, Batts sent the Agreement to CAM with their edits, which was approved by the President of Pratt Industries John Day ("Day") and their legal department. *Id.* at 7. CAM alleges this draft recognized the parties were already operating under the previously negotiated terms, effective January 1, 2018. *Id.* CAM alleges the parties unintentionally did not complete its execution. *Id.* CAM asserts the parties have operated under certain agreed upon terms reflected in the Agreement since January of 2018. *Id.* In March of 2020, Defendants informed CAM it would no longer use its warehousing services beginning May 1, 2020 and would no longer remit monthly payments. *Id.* at 7-8.

On April 1, 2020, CAM initiated this suit for anticipatory breach of contract and detrimental reliance. *Id.* at 8. CAM contends it will suffer damages, including the monthly payments due under the Agreement from May 2020 to December 2020, a total of $445,829.28. *Id.* CAM seeks monetary damages, attorney fees, costs, and interest. *Id.* CAM further alleges it relied on representations, promises, and conduct of Defendants that they would require warehousing services for a three-year period. *Id.* at 8-9. Based on the representations and award by Defendants, CAM entered a three-year warehousing lease, outfitted the leased premises, and secured equipment for the warehousing services. *Id.* at 9. CAM seeks damages for the sum of the remainder of the lease payments for May 2020 to December 2020,

prorated expenses for the outfitting of the warehouse and equipment, and any and all out of pocket expenses, costs, and interest. *Id.*

Defendants answered, asserting various affirmative defenses.  ECF No. 8. Defendants now seek dismissal for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim for relief.  ECF No. 15.  In support, Defendants submit the Declaration of Turner (ECF No. 15-2); the Declaration of Batts (ECF No. 15-3); and a draft of the Agreement (ECF No. 15-4).  On July 28, 2020, the Court granted jurisdictional discovery limited to the issue of personal jurisdiction.  ECF No. 26.

CAM opposes dismissal.  ECF No. 34.  In support, CAM submits:  (1) the Declaration of Shea (ECF No. 34-1), including attached exhibits; (2) Defendants' Responses to Jurisdictional Discovery (ECF No. 34-2); and (3) a manual attachment of a video of Batts (ECF No. 34-3).

CAM also responds with a Motion for Leave to File First Amended Complaint ("Motion to Amend") (ECF No. 38) to "correct misstatements in the original Compliant, including, but not limited to, Paragraph 31, and to more fully set forth the underlying facts."  ECF No. 38.  Defendants did not file an opposition.

## II.  Law and Analysis

### A.  Standards governing a Rule 12(b)(1) Motion to Dismiss.

It is well settled that when a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) jurisdictional motion before addressing any attack on the merits. *Hill v. City of Pasadena*, 561

F.2d 606, 608 (5th. Cir. 1977) (*per curiam*). Therefore, the Court considers Defendants' jurisdictional arguments first.

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also* Fed. R. Civ. P. 12(b)(1). A district court may dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*, 281 F.3d at 161.

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995)). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does, in fact, exist. *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

"Under Rule 12(b)(1), a court has wide discretion to review affidavits, and other documents outside of the pleadings, as well as to conduct a limited evidentiary hearing, in order to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside of the pleadings does not convert the motion to a Rule 56 summary judgment motion." *Martin v. Napolitano*, 11-CV-1368, 2012 WL 1413579, at *3 (W.D. La. Apr. 2, 2012), *report and recommendation adopted,* 11-CV-1368, 2012 WL 1413162 (W.D. La. Apr. 23, 2012) (citing *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995); *see also Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) ("[W]here subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. No presumptive truthfulness attaches to the plaintiff's allegations.").

B.   The Court has diversity jurisdiction.

Diversity jurisdiction is satisfied upon a showing of: (1) diversity of citizenship between the parties; and (2) an amount in controversy in excess of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.  The party seeking to invoke federal jurisdiction has the burden to prove that the amount in controversy exceeds the jurisdictional minimum. *Garcia v. Koch Oil Co. of Texas, Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Larremore v. Lykes Bros. Inc.*, 454 Fed.Appx. 305, 306 (5th Cir. 2011).  Defendants do not contest CAM's allegations that the jurisdictional threshold is met.  ECF No. 15-1 at 15-16.  Thus, the question before the Court is whether diversity of citizenship exists among the parties.

8

"Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (internal citation and quotation omitted). "[W]hen jurisdiction depends on citizenship, citizenship must be *distinctly and affirmatively* alleged." *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (internal quotation omitted); *see also Mullins v. Testamerica, Inc.*, 300 Fed.Appx. 259 (5th Cir. 2008) (per curiam).

The citizenship of an individual is his or her domicile, meaning the place where an individual resides and intends to remain. *See Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003). A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. *See Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C.*, 757 F.3d 481, 483 (5th Cir. 2014). "[T]he citizenship of a partnership is determined by reference to the citizenship of each of its partners." *See Int'l Paper Co. v. Denkmann Associates*, 116 F.3d 134, 135, 137 (5th Cir. 1997). The citizenship of an L.L.C., a limited partnership, or other unincorporated association or entity, is determined by the citizenship of all its members. *See Harvey*, 542 F.3d at 1079-80.

Defendants argue the Complaint contains insufficient detail to allege diversity of citizenship of the parties. ECF No. 15-1 at 15. They contend CAM fails to allege the location of the L.L.C.'s principal place of business. *Id.* at 16.

9

Here, the Complaint (ECF No. 1) alleges CAM is an L.L.C. whose sole member is Susan Stedman, a domiciliary of Ohio. ECF No 1 at 1. CAM's corporate disclosure statement (ECF No. 7) shows it is an Ohio L.L.C. *Id.* at 15-16. The citizenship of an L.L.C. is determined by the citizenship of all of its members. Here, that is Ohio. *See Harvey*, 542 F.3d at 1079-80. Defendants do not contest CAM's assertions regarding Defendants' citizenship of Delaware and Georgia. The allegations are sufficient to allege that CAM is a citizen of Ohio – completely diverse from Defendants. Thus, the Complaint (ECF No. 1) sufficiently alleges diversity jurisdiction. Defendants' request to dismiss for lack of subject matter jurisdiction should be DENIED.

C.    Standards governing a Rule 12(b)(2) Motion to Dismiss.

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where the Court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where, as in this case, a nonresident defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Id.* "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[ ] for purposes of determining whether a prima facie case for personal jurisdiction has been

established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983)). The court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery. *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996) (citing *Colwell Realty Investments v. Triple T. Inns of Arizona*, 785 F.2d 1330 (5th Cir. 1986)). However, the court is not required to credit conclusory allegations, even if uncontroverted. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citing *Felch v. Transportes Lar-Mex*, 92 F.3d 320, 326, n.16 (5th Cir. 1996)).

A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable law. *See Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). To exercise personal jurisdiction over a nonresident defendant, two requirements must be met. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999). First, the nonresident defendant must be amenable to service of process under the forum State's jurisdictional long-arm statute. *Id.* Second, the assertion of *in personam* jurisdiction must be consistent with the Fourteenth Amendment's Due Process Clause. *Id.* Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution. *See* La. Rev. Stat. Ann. § 13:3201(B). Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the nonresident defendant comports with federal due process.

The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when:  (1) that defendant has established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Moncrief Oil Int'l v. OAO Gasprom*, 481 F.3d. 309, 311 (5th Cir. 2007) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)); *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir. 1993) (citing *Int'l Shoe Co.,* 326 U.S. at 316).  The "minimum contacts" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction.  *Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 205 (5th Cir. 1996); *see also Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

### D.    The Court lacks general jurisdiction over all Defendants.

A court may exercise general personal jurisdiction over a defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S at 317).  A corporation is generally only "at home" in the state of its incorporation or its principal place of business.  *See BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017) (internal citations omitted).  "In an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the

corporation at home in that State.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 136-39 & n. 19 (2014)). "Injecting a product, even in substantial volume, into a forum's 'stream of commerce,' without more, does not support general jurisdiction." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987)).

In *Daimler*, the Supreme Court expressly rejected the argument that a corporate defendant is subject to general jurisdiction in every state where it engages in a substantial, continuous, and systematic course of business. *Daimler*, 571 U.S. at 136-39. Instead, the Court explained that the "continuous and systematic" test remains relevant only for the purpose of establishing *specific* jurisdiction over a corporate defendant that is neither incorporated nor has its principal place of business in the forum state – that is, personal jurisdiction based on the events or transactions giving rise to the litigation that occurred in that particular state. *Id.* (emphasis added).

As such, to establish general jurisdiction over Defendants, CAM must establish the "exceptional case" that Defendants' operations are so substantial as to render Defendants "at home" in Louisiana. *See BNSF Ry. Co.*, 137 S.Ct. at 1558 (quoting *Daimler AG v. Bauman*, 134 S.Ct. at 760-61 & n. 19 (2014)). The Fifth Circuit has observed that "[i]t is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Firefighters' Ret. Sys. V. Citco Grp. Ltd.*, 2016 WL 3460396, at *2 (M.D. La. 2016) (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

CAM alleges Pratt Industries is incorporated in Delaware, with its principal place of business in Georgia.  ECF No. 1 at 2.  CAM also alleges that Defendant Rockwall Corrugating is an L.L.C. whose sole member is Pratt Corrugated Holdings, Inc., which is incorporated in Delaware, with its principal place of business in Georgia.  *Id.*  It is thus undisputed that the Court lacks general jurisdiction over Defendants.

> E.    **CAM establishes specific personal jurisdiction over Rockwall only.**

Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to a defendant's contacts with the forum.  *Luv N' Care v. Insta-Mix*, 438 F.3d at 469.  For a federal court to properly exercise jurisdiction, the Fourteenth Amendment Due Process clause requires that: "(1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair pay and substantial justice.'" *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343, 345 (5th Cir. 2004) (quoting *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990); *Int'l Shoe*, 326 U.S. at 310).  Once plaintiff has made a *prima facie* showing under the first prong, the burden shifts to the defendant to show, under the second prong, that the exercise of jurisdiction would not comply with "fair play" and "substantial justice." *Id.*

1.    <u>Minimum Contacts</u>

As to the first prong, it is undisputed both Defendants are nonresidents. Thus, the Court analyzes whether CAM establishes a *prima facie* case that Defendants have minimum contacts with Louisiana.

Defendants argue the causes of action have nothing to do with Louisiana. ECF No. 15-1 at 19.   Defendants assert CAM's claims arise out of an alleged agreement between non-Louisiana companies.  *Id.*  Defendants further contend the alleged agreement was between CAM and Rockwall, not Pratt Industries.  *Id.* Defendants further argue there is no basis for jurisdiction over Pratt Industries.  *Id.*

Defendants contend that the fact that the alleged agreement involve CAM providing services in Louisiana is not important, as those services are not at issue. *Id.*  Defendants state that it is the alleged agreement between the non-Louisiana companies and the negotiations that took place outside of Louisiana that form the basis of CAM's claims.  *Id.*  But Defendants contend that none of the negotiations took place in Louisiana.  *Id.*  They assert performance by Rockwall was to pay CAM, originating from Texas to Ohio.  *Id.*  Defendants argue the draft Agreement itself calls for application of Delaware law and selects Delaware as its forum.  *Id.*

CAM responds that Defendants' contacts with Louisiana are sufficient to establish personal jurisdiction.  ECF No. 34 at 19.  CAM argues Defendants had substantial, purposeful, and regular contacts with Louisiana over two years relating to the contract and warehousing services.  *Id.*

"Minimum contacts" giving rise to specific jurisdiction are established when: (1) that corporation purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [sic] contacts with the forum state. *Freudensprung*, 379 F.3d at 343, 345; *see also Alpine View*, 205 F.3d at 215 (citing *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

### a.   CAM fails to establish personal jurisdiction over Pratt Industries, Inc.

Personal jurisdiction over a nonresident corporation may not be based upon the contacts with the forum state by another corporate entity with which the nonresident corporation may be affiliated. *Freudensprung*, 379 F.3d at 343, 345 (citations omitted); *see also Oyuela v. Seacor Marine (Nigeria), Inc.*, 290 F.Supp.2d 713, 722 (E.D. La. Oct. 21, 2003) (citation omitted) ("Ordinarily, where a parent and an affiliate or two affiliate companies maintain separate identities, jurisdiction over one does not provide a basis of jurisdiction over the other."). An affiliate's or subsidiary's contacts may be attributed or imputed to the parent for personal jurisdiction purposes where the subsidiary or affiliate is the parent's alter ego or general agent. *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 546 (5th Cir. 2014); *see also Jackson*, 615 F.3d at 586; *Oyuela*, 290 F.Supp.2d at 722. The general presumption of corporate separateness may be overcome with clear evidence beyond the mere existence of a corporate relationship between a resident and nonresident to warrant jurisdiction over the nonresident. *Freudensprung*, 379 F.3d at 346 (citations omitted). "The rationale for

16

such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).

In determining whether CAM has overcome the presumption of corporate separateness, this Court considers the *Hargrave* factors set forth by the Fifth Circuit:  (1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether they share officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over its daily operations.   *Freudensprung*, 379 F.3d at 346 (citing *Hargrave*, 710 F.2d at 1160); *see also Dickson Marine Inc.*, 179 F.3d at 339 (citing *Hargrave*, 710 F.2d at 1160).

Here, CAM alleges Rockwall is the subsidiary of Pratt Industries, Inc.  ECF No. 1 at 2.   CAM's allegations refer to Rockwall and Pratt Industries, Inc. as "Pratt" or "Pratt Industries," collectively.[1]  ECF No. 1. CAM argues Pratt sought Louisiana warehousing services, contacted CAM employees at the Louisiana warehouse almost daily, delivered goods (or caused to be delivered) shipments of goods to the Louisiana warehouse, directed shipments from the Louisiana

---

[1] However, the Court does not adopt the same reference herein and the Court refers to Pratt Industries, Inc. as "Pratt Industries" and refers to Rockwall and Pratt Industries, collectively, as "Defendants."

warehouse to Pratt customers almost daily, and had its representatives physically present at the warehouse almost weekly.  ECF No. 34 at 7.

However, although CAM alleges Rockwall is a subsidiary of Pratt Industries, Inc., it fails to establish that Rockwall is an agent or alter ego of Pratt Industries, Inc. such that any alleged contacts may be imputed to Pratt Industries, Inc.  The jurisdictional discovery, record, and evidence show that Rockwall's sole member is Pratt Corrugated Holdings, Inc. – a holding company.  ECF Nos. 34-2 at 13, 20-22.  Pratt Corrugated Holdings, Inc. is a wholly owned subsidiary of Pratt Industries, Inc.  ECF Nos. 34-2 at 15, 20-22.  Pratt (Jett Corr), Inc. and Rockwall are wholly owned subsidiaries of Pratt Corrugated Holdings., Inc. *Id.*

CAM argues Turner and Batts held themselves out as negotiated on behalf of "Pratt Industries" such that CAM argues it contracted with Pratt Industries, Inc.  CAM shows Batts and Turner have email addresses ending with "@prattindustries.com," and argues they hold themselves out online as being employed by Pratt Industries. ECF No. 34-1 at 2-4, 6, 10, 13-19, and 56.

The record and evidence show that "Pratt Industries" is a trade name used for affiliates of Pratt Industries, Inc.  ECF No. 34-2 at 19.  But jurisdictional discovery shows that neither Defendant nor any of their subsidiaries or affiliates are incorporated or are headquartered in Louisiana.  ECF No. 34-2 at 5.  Neither Defendant owns or leases real property in Louisiana.  *Id.*  Pratt Industries, Inc. does not own or operate facilities or plants in Louisiana.  *Id.* at 14.  Defendants' verified discovery responses establish – and Turner and Batts attest – that neither

of them negotiated transactions on behalf of Pratt Industries, Inc.  ECF No. 34-2 at 9.

The record shows that Pratt Industries, Inc. employees oversee sales and production for Rockwall, which sometimes involves contracts.  ECF No. 34-2 at 10. And those employees make recommendations.  *Id.*  However, the record also shows that Pratt Industries, Inc., Pratt Corrugated Holdings, Inc., and Rockwall, are separate legal entities.  *Id.* at 11. Pratt Industries, Inc., Pratt Corrugated Holdings, Inc., and Rockwall do not share any financial accounts.  *Id.*  Pratt Industries, Inc. develops corporate policies and provides them to its affiliated entities for their consideration, and if acceptable, implementation. *Id.* at 12.  Pratt Corrugated Holdings, Inc. is a holding company and does not conduct its own daily operations. *Id.* at 13.  Pratt Industries, Inc. employees provide oversight and management consulting regarding areas affecting daily operations (e.g. safety and human resources), but Rockwall controls its daily operations. *Id.*

Considering the *Hargrave* factors, CAM fails to establish Rockwall is the alter ego or general agent of Pratt Industries, Inc.  There is simply no clear evidence from CAM to overcome the presumption of corporate separateness of Rockwall and Pratt Industries, Inc. to warrant jurisdiction over Pratt Industries, Inc.   *See Freudensprung*, 379 F.3d at 346.  Thus, Pratt Industries, Inc. should be dismissed without prejudice for lack of personal jurisdiction.[2]

---

[2] Having determined the Court lacks personal jurisdiction over Pratt Industries, Inc., the Court need not consider the remaining motions as to Pratt Industries, Inc. The Court's further analysis only addresses Defendants' arguments as to CAM's claims against Rockwall.

**b.    CAM shows *prima facie* that Rockwall's minimum contacts are sufficient to establish specific jurisdiction.**

Defendants argue there is no specific jurisdiction because no relevant actions took place in Louisiana.  ECF No. 15-1 at 10.  They further assert this matter concerns an unsigned agreement between two foreign companies (CAM and Rockwall), and that none of the Defendants provided any goods or services to CAM in Louisiana.  *Id.* at 10.  Although they dispute the draft Agreement's enforceability, Defendants argue the draft Agreement CAM seeks to enforce contains a Delaware choice-of-law provision and Delaware forum selection clause.  *Id.* at 19-21.

Defendants argue that none of the negotiations of the draft took place in Louisiana.  ECF No. 15-1 at 11, 19.  Defendants submit that the key personnel involved in the transaction on behalf of any Pratt-affiliated entity are Turner and Batts. *Id.*  Turner attests he lived and was based in Illinois, employed by a company called Pratt (Jet Corr), Inc. (also a Delaware company with its headquarters in Georgia).  ECF Nos. 15-1 at 12, 15-2 at 1.  Turner further attests that as Strategic Account Manager, he is responsible for managing accounts and relationships between certain cutomers and certain affiliated entities, including P&G.  *Id.*  He attests he met Shea, who he understood to be employed with CAM, at an event in Detroit, Michigan in October of 2017. *Id.*  During that discussion, Turner states he discussed CAM providing warehousing services in Central Louisiana – a discussion that arose out of business received from P&G, whereby Rockwall (whose facility is in Texas) would be supplying the corrugating packaging for another P&G supplier so that it can utilize the packaging to ship its own products to P&G.  *Id.; see also*

20

ECF No. 15-3 at 1.  Batts, general manager of Pratt (Rockwall Currugating), also attests Rockwall was searching for warehousing services arising out of business received from P&G.   ECF No. 15-3 at 1.   Both Turner and Batts aver Pratt Industries, Inc. was not a party to that transaction involving P&G for Rockwall to supply packaging.  ECF Nos. 15-1 at 12, 15-2 at 2, 15-3 at 1.

Turner further avers the packaging was to be manufactured in Texas, where Rockwall is based, that the packaging was to be stored in a warehouse in Louisiana, and then shipped out as needed by that other supplier. ECF Nos. 15-1 at 12, 15-2 at 2.  Batts attests to the same.  ECF No. 15-3 at 1. Batts states he is based in Rockwall, Texas where Rockwall's principal business is owning and operating the corrugating plant.  *Id.*

Around that same time, Turner was in discussions with more than one entity about providing warehousing services.  ECF Nos. 15-1 at 12, 15-2 at 2. He referred those entities, including CAM, to Batts, the general manager of the Rockwall facility.  *Id.*; *see also* 15-3 at 1. Turner and Batts both attest Batts lives and is based in Texas, and that throughout the relevant time period, the relevant business contact at CAM was primarily, if not solely, Shea, who is based near Columbus, Ohio. ECF No. 15-1 at 12, 15-2 at 2, 15-3 at 2.

To the extent either took part in any discussions or negotiations with CAM, both Turner and Batts declare they were not in the state of Louisiana at the time. *Id.*  Neither recall conducting any in-person negotiations with CAM in Louisiana. *Id.* And both attest they believe Shea was physically present in the state of Ohio (or

21

Michigan), not Louisiana, during any discussions or negotiations with them. *Id.* Batts states he discussed CAM's providing warehousing services with Shea, an employee of CAM who lives and is based in Columbus, Ohio. ECF No. 15-3 at 1-2.

Turner and Batts attest they were informed by CAM in December 2017 that it had supposedly signed a lease for a warehouse in Louisiana. ECF Nos. 15-2 at 2, 15-3 at 2. And both attest that, prior to CAM allegedly signing a lease, neither accompanied CAM to select warehouse space, saw the relevant warehouse space, or received a copy of the warehouse lease. *Id.* Batts states that in December of 2017, Rockwall received from CAM a draft of a "Warehousing and Logistics Agreement." ECF No. 15-3 at 2. And both attest they were – and specifically that Batts was – explicit with CAM that Rockwall required a written, signed contract with CAM that had to be approved by in-house legal counsel. ECF Nos. 15-2 at 2, 15-3 at 2.

On April 24, 2018, Batts forwarded a proposed revised version of the Agreement that included comments from in-house legal counsel. ECF No. 15-3 at 2-3. Batts attaches a partially redacted copy of the proposed revised Agreement. *Id.*; *see also* 15-4.

Turner and Batts attest that neither Defendants, nor any affiliated entity, ever contemplated providing any goods or services to CAM in Louisiana or otherwise. *Id.* at 3; *see also* 15-3 at 2. Turner and Batts state that until the relationship ended, Rockwall's only purported obligation to CAM was to make payment. ECF Nos. 15-2 at 2, 15-3 at 3. They also assert that all payments were sent by Rockwall from Texas to CAM in Ohio. *Id.*

Turner and Batts declare, and it is undisputed, that Rockwell and CAM did not execute a formal written agreement.  ECF Nos. 1 at 6, 15-2 at 2, 15-3 at 3. Batts attests that in the summer of 2019 he told Shea that P&G's needs were changing and they may no longer need warehousing services.  ECF No. 15-3 at 3. Turner states he also discussed that in November of 2019 with Shea. ECF No. 15-2 at 2.  Absent a signed agreement for a specific term, Turner attests Rockwall informed CAM in early 2020 it would no longer be using CAM's warehousing services. *Id.*  Batts told Shea in January 2020 that because Rockwall never signed an agreement with CAM, Rockwall considered its arrangement with CAM to be at will. ECF No. 15-3 at 3.  Batts attests Shea responded to the effect of "see you in court."  *Id.*  Batts later formalized the termination of Rockwall's relationship with CAM. *Id.*

CAM responds that Defendants directed CAM to perform warehousing services in Louisiana.  ECF no. 34 at 20-21.  CAM further contends that the warehousing services were an essential element of the three-year contract that Defendants ultimately awarded CAM.  *Id.*

CAM disputes Defendants' assertion that no negotiations took place in Louisiana.  *Id.*  CAM submits the affidavit of Shea, who attests he was in Louisiana on different occasions in November and December of 2017 when he negotiated the contract with Turner and Batts.  ECF Nos. 34 at 20, 34-1 at 4-5.  Shea attests Defendants' representatives set up a meeting between him and one of their Louisiana customers Plastipak Packaging, Inc. ("PPI") for Shea to determine the

needs of the contract. *Id.* He also attests that Defendants assisted CAM in securing the warehousing lease in Louisiana. *Id.*

Shea attests that "[d]uring the term of the Three-Year Contract and prior to [D]efendants' breach (approximately two years and four months), [D]efendants exercised significant control of the warehousing services provided by CAM in Louisiana, including, but not limited to, inspections, warehouse specifications, storage[,] and directing when and where shipments were to be delivered." ECF Nos. 34 at 20, 34-1 at 7-8. Shea states Turner (along with Louisiana representatives from P&G and PPI) came to the Louisiana warehouse to inspect it prior to it becoming operational. *Id.*

Shea attests that, during the three-year term and prior to Defendants' breach, representatives of Defendants came to the warehouse on an almost weekly basis to perform quality control inspections, re-tag items, address any problems, and request certain work, such as re-strapping and re-working of units. *Id.* Shea further attests at least one of the Defendants' representatives was Shawn Sharpe, a Louisiana resident. *Id.* CAM argues, and Shea attests, that Defendants' representatives communicated with CAM employees at the Louisiana warehouse daily, including phone calls and emails. ECF Nos. 34 at 20; 34-1 at 8. Shea attests that during the three-year term prior to Defendants' breach, Defendants' representatives delivered (or caused to be delivered) goods to the Louisiana warehouse on an almost daily basis. *Id.* Shea attests that Defendants' representatives directed CAM employees at the Louisiana warehouse on an almost

daily basis to deliver or have delivered goods to the PPI plant in Pineville, Louisiana. ECF Nos. 34 at 20, 34-1 at 9.

Shea states that Defendants' representatives directed CAM employees at the Louisiana warehouse to deliver, or have delivered, goods to plants operated by Defendants or related entities, including a plant in Shreveport, Louisiana. ECF Nos. 34 at 20-21, 34-1 at 9. Shea further states that Defendants had the ability to, and did access, CAM's electronic inventory system of the goods for the Louisiana warehouse, which system was maintained from Louisiana. *Id.*

Shea attests that the Delaware choice of law and forum selection clause was not contained in the initial draft and was never agreed to by CAM. ECF Nos. 34 at 21, 34-1 at 11. CAM contends these provisions were never discussed at any point. *Id.* CAM argues that material performance of the contract was centered in Louisiana. ECF No. 34 at 21. And that Defendants exercised significant control over the warehousing services provided by CAM in Louisiana. *Id.* And Defendants willfully breached a contract they knew was being performed in Louisiana (and which they directed to be performed in Louisiana). *Id.*

"[S]pecific personal jurisdiction is a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006)).

In contract cases, the Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a . . . resident is sufficiently purposeful to satisfy minimum contacts." *Jones,* 954 F.2d at 1066 (citing *Barnstone v. Congregation Am. Echad,* 575 F.2d 286, 288 (5th Cir.1978)); *Holt Oil,* 801 F.2d at 778; *accord St. Martin & Mahoney, APLC v. Diversified Aircraft Holdings, Ltd.,* 934 F.Supp. 200, 205 (E.D.La.1996) (Fallon, J.) ("[O]ne of the most pivotal considerations in determining whether there has been 'purposeful availment' is where the material performance of the contract was centered.").

For determining specific jurisdiction for a breach of contract claim, "only those acts which relate to the formation of the contract and the subsequent breach are relevant." *Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 489 (5th Cir. 2018) (quoting *Religious Tech. Ctr. V. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003)). "This includes 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King Corp.* 471 U.S. at 479).

"Communications relating to the performance of a contract themselves are insufficient to establish minimum contacts." *McFadin*, 587 F.3d at 760 (citing *Freudensprung v. Offshore Technical Services, Inc.,* 379 F.3d 327 344 (5th Cir. 2004) ([T]his court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the

nonresident defendant and a resident of the forum are insufficient to establish minimum contacts"). Partial performance of a plaintiff in the forum state is insufficient to establish jurisdiction. *Trois* 882 F.3d at 489 (citing *Nerium Int'l, LLC v. Kum Sun*, No. 05-13-00427, 2014 WL 1789882, at *3 (Tex. App. May 2, 2014)). And "merely contracting with a resident of the forum sate is insufficient to subject the nonresident to the forum's jurisdiction." *Parker v. Pro-West Contractors, LLC*, 2013 WL 431046, at *5 (W.D. La. Feb. 1, 2013) (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)); *see also Burger King*, 471 U.S. at 478.

Defendants respond that performance by Rockwall was payments to CAM in Ohio from Rockwall in Texas. ECF No. 36 at 2-3. Defendants state that the cases cited by CAM are distinguishable as they all involve payment tendered (or requested to be tendered) in the forum state. *Id.* Defendants contend the events after the relevant period of contract formation – October to December 2017 – are not relevant, as well as any activities or performance by CAM. *Id.* at 2. Defendants contend the causes of action arise from the alleged agreement between two non-Louisiana companies – Rockwall and CAM. ECF No. 15-1 at 19.

It is undisputed there is no written agreement. But it is disputed whether there was an oral contract for a three-year term. However, in evaluating the contacts with Louisiana, the Court finds that Louisiana policies would be impaired if its laws were not applied to the alleged oral contract – the object of which was to perform services in Louisiana.

Assuming CAM's allegations are true, CAM's cause of action "arises out of" Rockwall's contact with the state.  According to the Supreme Court, "although physical presence in the forum is not a prerequisite to jurisdiction, . . . physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).  CAM establishes Rockwall "purposefully availed" itself of the privileges of conducting activities in Louisiana as material performance of the contract was centered in Louisiana. *Seatrepid Louisiana, LLC v. Richard Phillips Marine, Inc.*, 2009 WL 1402232, at *6 (E.D. La. May 14, 2009); *see also Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003) ("[A] nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state").

Defendants focus on alleged contacts concerning the prior negotiations of the alleged contract.  However, both acts which relate to the formation of the contract and the subsequent breach are relevant. *Trois*, 882 F.3d at 489 (quoting *Religious Tech. Ctr.*, 339 F.3d at 375. Here, CAM establishes a *prima facie* case that the parties contemplated future consequences – warehousing services for Rockwall's goods and materials – in the forum state.  And CAM establishes a *prima facie* case that the parties' actual course of dealing where Rockwall sent goods and materials – corrugated paper products and materials – to CAM in the forum state for receipt, storage, handling, and dispatching in accordance with Rockwall's instructions.  It is

28

undisputed the parties engaged in that course of dealing from January 1, 2018 to approximately March of 2020.

Defendants represent that it never contemplated that they – or any related entity – would provide any goods or services to CAM in Louisiana or otherwise. However, Defendants' own draft Agreement – whether enforceable or not – reflects otherwise. And while the drafts differ as to the conflict of laws and forum selection clauses, neither was executed. Not only is it reasonably foreseeable Rockwall purposely availed themselves of the forum, the alleged contract contemplated the "hub of activities" to take place in Louisiana where Rockwall sought CAM's services to receive, store, handle, and dispatch Rockwall's material and goods. *See Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003).

CAM establishes *prima facie* that it was not only advantageous to Rockwall that CAM have a Louisiana facility, but that it was the basis for the alleged agreement. *Id.*; ECF Nos. 34-1 at 18, 15-4 at 1; 15-2 at 2 (Turner attesting Rockwall packaging was to be manufactured in Texas, which was to be stored in a warehouse in Louisiana); 15-3 at 1 (Batts attesting to same).[3] It is clear from the record that

---

[3] In cases involving products sold or manufactured by foreign defendants, the Fifth Circuit applies the "stream-of-commerce" approach to personal jurisdiction. *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). The stream-of-commerce principle refers to "the regular and anticipated flow of products from manufacturer to distribution to retail sale." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 117 (1987). In *Ainsworth*, the Fifth Circuit explained that, under the "stream-of-commerce" approach to personal jurisdiction, the minimum contacts requirement is met so long as the court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Id.* at 177. Under that test, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce," but "[t]he defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *Id.*

29

there was more than a "[r]andom, fortuitous, or attenuated" connection between Rockwall and Louisiana. *Moncrief Oil*, 481 F.3d at 313. And while uncontroverted allegations in the complaint must be taken as true, conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for deciding whether a *prima facie* case for personal jurisdiction exists. *See WAS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). Therefore, the Court finds CAM has shown a *prima facie* case of personal jurisdiction over Rockwall.[4]

### 2. Exercising personal jurisdiction does not offend the notions of fair play and substantial justice.

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." *Wilson v. Belin,* 20 F.3d 644,647 (5th Cir. 1994) (citing *Asahi,* 480 U.S. at 105). The fairness inquiry is determined by analyzing several factors. *Asahi,* 480 U.S. at 113. These factors are: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient

---

According to the Supreme Court, "although physical presence in the forum is not a prerequisite to jurisdiction, . . . physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

[4] CAM alleges claims for breach of contract and detrimental reliance. ECF No. 1. Although the Fifth Circuit separates the jurisdictional analysis of contract claims from tort claims, *e.g., McFadin*, 587 F.3d at 761-62, this is not required where non-contract claims are "essentially a restatement of [a] breach of contract claim," *First Metro. Church of Hous. v. Genesis Grp.*, 616 Fed.Appx. 148, 149 (5th Cir. 2015) (per curiam). Here, CAM's detrimental reliance claim sounds in contract. Having determined CAM established a *prima facie* case that Rockwall's minimum contacts were sufficient to support jurisdiction over the contract claim, the contacts are equally sufficient to support specific jurisdiction over the detrimental reliance claim.

resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *See Gundle Lining Const. Corp.,* 85 F.3d at 207; *Bullion v. Gillespie,* 895 F.2d 213, 216 n. 5 (5th Cir.1990) (internal citations omitted).

CAM contends Defendants have made no compelling showing that renders jurisdiction unreasonable. ECF No. 34 at 22. And in fact fail to address it in their briefing. *Id.* The Fifth Circuit has determined that if minimum contacts are established, it will be rare that a court determines that the exercise of jurisdiction would be unfair since the interests of the forum state in resolving the matter may justify even large burdens on the non-resident defendant. *McFadin,* 587 F.3d at 759-60.

Here, the Court finds that exercising jurisdiction over CAM's claims does not offend traditional notions of fair play and substantial justice. While there will be some burden on Rockwall in defending this action in Louisiana, CAM's interest in obtaining convenient and effective relief and the interest of Louisiana in efficiently resolving claims concerning business activities directed in Louisiana outweigh that burden.

F. <u>**Venue is proper in the Western District of Louisiana.**</u>

Defendants argue CAM has not sufficiently alleged venue and ignores the forum selection clause of the document it now seeks to enforce. ECF No. 15-1 at 19. Defendants state CAM alleges venue is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this

district. ECF Nos. 15-1 at 19, ECF No. 1 at 1.  However, Defendants contend that CAM's assertions that a substantial part of the events occurred in Louisiana amount to conclusory statements.  ECF No. 15-1 at 20.  And Defendants assert that "the substantial part test requires a more significant relationship to the forum than is required by the minimum contacts test of personal jurisdiction."  *Id.*

Defendants contend that because CAM cannot establish the minimum contacts test, CAM also fails to plead a significant relationship to the forum.  *Id.* Defendants further aver that the dispute concerns two foreign companies, and that CAM fails to allege any negotiations took place in Louisiana, or that Rockwall's alleged obligations occurred here.  *Id.*  Although they recognize the Court may dismiss or transfer under 28 U.S.C. § 1406(a), Defendants seek dismissal for improper venue under Fed. R. Civ. P. 12(b)(3).  *Id.*

CAM responds that Defendants ignore the remaining allegations in the Complaint.  ECF No. 34 at 29.  CAM argues that for breach of contract, "venue is proper at the place of performance."  *Id.*  CAM asserts the place of performance of the alleged three-year contract was primarily in Alexandria, Louisiana.  ECF No. 34 at 30.  CAM contends that "but for the Three-Year Contract providing for warehousing services in Louisiana and Pratt's representations for CAM to enter into a three-year lease in Louisiana (along with other obligations), there would be no litigation when Pratt decided to stop using CAM's warehousing services prior to the end of the three years."  *Id.*  And that Defendants' venue argument is premised on their claim that the Court lacks personal jurisdiction.  *Id.* at 30-31.  CAM

contends that because it has shown the Court has personal jurisdiction, that venue is proper here. *Id.* at 31.

If a defendant objects to venue, the burden is on the plaintiff to establish venue is proper in the judicial district where the case has been brought. *See Strange v. Carnival Corp.*, 2019 WL 1281251 at *4 (W.D. La. Mar. 20, 2019). In analyzing a Rule 12(b)(3) motion to dismiss, the court must accept all allegations in the complaint as true and resolve all conflicts in favor of the plaintiff. *See Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed.Appx. 612, 615 (5th Cir. 2007). Furthermore, the court may consider evidence beyond the facts "alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is "wrong" or "improper." Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws. *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49 (2013). Generally, venue must be proper as to each distinct cause of action. *Tucker v. U.S. Dep't of Army*, 42 F.3d 641, *2 (5th Cir. 1994) (unpubl.) (citation omitted). Under the general venue statute, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). However, the court cannot premise venue under § 1391(b)(3) if another venue is already proper under §§ 1391(b)(1) or (b)(2). *Nat'l Util. Serv., Inc. v. Singularity, Inc.*, No. 18-3142, 2020 WL 264108, at *2 (N.D. Tex. Jan. 16, 2020); *Fowler v. Deloitte & Touche, LLP*, No. 15-2695, 2017 WL 1293983, at *5 (W.D. La. Mar. 24, 2017). If a case falls within one of § 1391(b)'s districts, venue is proper. If it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).

Despite agreement that there is no written contract, Defendants argue the parties contemplated a forum selection clause setting jurisdiction in either Delaware or Ohio – not Louisiana. A forum selection clause may be enforced by a motion to transfer under § 1404(a), the codification of the doctrine of *forum non conveniens*. *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49 (2013). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2243, 101 L.Ed.2d 22 (1988) (citation and internal quotation marks

omitted). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc) (citations omitted).

However, whether the parties' contract contains a forum selection clause has no bearing on whether a case falls into one of the specified districts under § 1391(b). *See Atlantic Marine Const. Co.*, 571 U.S. at 573. And the parties agree that they did not execute a written contract. Defendants' assertions concerning a forum selection clause or choice of law provision are inapposite as there is no clear contractual forum.

Rather, CAM alleges the parties negotiated and agreed upon certain terms, terms which Rockwall allegedly breached and upon which CAM detrimentally relied. The record shows that CAM proposed a draft which included a forum selection clause and conflict of law provision in Ohio, but that Defendants proposed a revised draft changing the terms to Delaware. Here, the facts, construed in CAM's favor, establish there was no agreement on a binding forum selection clause. Whether the parties had a binding contract that was breached is to be determined on the merits.

In the absence of an applicable forum selection clause, venue is governed by § 1391. For the purposes of venue, a corporation resides in any judicial district in which it is subject it is subject to the court's personal jurisdiction with respect to the civil action in question. *See* 28 U.S.C. § 1391(c)(2). The plain language of the venue

statute indicates that the residence of the plaintiff is not relevant in determining proper venue.  *See* 28 U.S.C. § 1391.  The focus is on the residence of the defendant. *See id.*  Because the Court finds the exercise of personal jurisdiction over Rockwall is proper in this District, venue is proper. *See* 28 U.S.C. § 1391(b)(1) and (c)(2).

Venue is also proper where a substantial part of the events or omissions giving rise to the claims occurred.  28 U.S.C § 1391(b)(2).  Venue may be proper in more than one district, and the "substantial part of the events or omissions test does not require that the chosen venue to be the *best* venue . . . [T]he selected district must simply have a substantial connection to the claim." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials, Inc.*, 982 F.Supp.2d 714, 722 (W.D. Tex. 2013) (emphasis in original) (*quoting VP, LLC v. Newmar Corp.*, No. 11-2813, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012)).

"'[S]ubstantiality' for venue purposes is 'more of a qualitative than quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.'" *Univ. Rehab. Hosp., Inc. v. Int'l Co-op. Consultants, Inc.*, No. 05-1827, 2006 WL 1098905, at *2 (W.D. La. Apr. 24, 2006) (quotations and citation omitted).  "Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial." *See McClintock v. Sch. Bd. East Feliciana Parish*, 299 Fed.Appx. 363, 365 (5th Cir. 2008).  "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and,

thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Univ. Rehab Hosp., Inc.*, 2006 WL 1098905 at *2 (citation omitted). Here, as discussed herein, a substantial part of the events giving rise to the claim occurred in this District and venue is thus proper.

Alternatively, although not separately briefed, Defendants seek transfer under 28 U.S.C. § 1404(a). ECF No. 15-1 at 8. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses" and "in the interest of justice," the Court may transfer an action to any other district where the plaintiff could have filed suit. 28 U.S.C. § 1404(a). Before a defendant can establish that transfer is proper under § 1404, he must first demonstrate that the district to which he seeks transfer would have been an appropriate venue had the plaintiff filed the action there. *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The defendant must then show "good cause" for transfer. *In re Volkswagen of America, Inc.*, 545 F.3d at 315. To show good cause, a defendant "must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Id.* (internal quotation marks omitted). When the transferee venue is not clearly more convenient, the reviewing court should respect the plaintiff's choice of venue. *Id.*

Here, there is no evidence that either Delaware or Ohio would be in any different position than this District. Other than the parties' states of incorporation, it is not clear either State would have any interest in the instant litigation. And no evidence indicates the proposed transferee district – Delaware – is more convenient,

as Rockwall's principal place of business is in Georgia, and its facility is located in Texas.

The Court finds that the proposed transferee district is not clearly more convenient than this forum.  Thus, the Court defers to CAM's choice of venue and transfer under 28 U.S.C. § 1404(a) is unwarranted.  To the extent Defendants seek dismissal for improper venue and, alternatively, to transfer venue, Defendant's Motion to Dismiss (ECF No. 15) should be DENIED IN PART.

G.   <u>Because there was no "meeting of the minds" with respect to a choice of law provision and applying Louisiana's choice of law rules, Louisiana law should apply to CAM's claims.</u>

The parties dispute what law – Delaware or Louisiana – governs CAM's claims. Defendants point to the language of one of the two draft Agreements calling for the application of Delaware law.  ECF No. 15-1 at 20-21. And they assert Louisiana's choice of law analysis requires application of Delaware law.  ECF No. 15-1 at 20-27.  Defendants argue Louisiana has no interest in adjudicating a dispute between non-resident companies and that there is no impairment of Louisiana law or policy.  ECF No. 15-1 at 21. Defendants argue Delaware has the greatest interest in the application of law because both Rockwall and Pratt Industries, Inc. are Delaware companies with their corporate headquarters in Georgia.  ECF No. 15-1 at 22.  Defendants argue none of the parties are from Louisiana and that the unsigned draft Aocument is between non-Louisiana parties, was not negotiated in Louisiana, and that none of the payments made were directed from or to Louisiana.

38

*Id.* Defendants argue Louisiana has no competing policy interest so there is a false conflict and Delaware law should be applied. *Id.*

CAM argues the parties reached an agreement on the fundamental terms of the three-year contract but had not agreed on – or negotiated – other provisions such as choice of law or venue. ECF No. 34 at 31. CAM asserts that although the parties never signed a written contract, their performance of certain agreed upon terms of the alleged three-year contract demonstrate meeting of the minds and a binding agreement. ECF No. 34 at 34. CAM admits that neither party was located in Louisiana for most of the negotiations, but that, Shea with the assistance of Defendants engaged in negotiations while in Louisiana during some of the negotiations and thereafter. *Id.* CAM further contends that Louisiana was both the place of performance and the location of the subject matter of the contract. CAM submits that the only factor favoring Delaware is the "domicile, resident, nationality, place of incorporation, and place of business." *Id.* CAM argues – and it is undisputed – that the contract was not performed in Delaware, no negotiations took place in Delaware, and no payments were made to or from Delaware. ECF No. 34 at 35.

CAM contends the Agreement was to provide warehousing services in Louisiana, that it hired three Louisiana citizens to assist in operating the warehouse, and that it entered ongoing obligations with Louisiana companies for the purchase or rental of equipment, propane, utilities, mechanic services, pest services, and internet. *Id.* at 34-35. CAM also asserts it paid taxes to the State of

Louisiana arising from the performance of the contract, as well as maintains separate insurance policies covering operations at the Louisiana warehouse. *Id.* at 35.

In determining which state's substantive law controls, the court applies the choice of law rules of the forum state. *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 206 (5th Cir. 2007); *see also Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007) ("In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state, including its conflict-of-law rules."). Thus, the Court applies Louisiana choice of law rules.

The rules governing Louisiana's conflicts law are delineated under Louisiana Civil Code Articles 3540, 3537, and 3515. Louisiana generally allows parties to select the law that will determine the outcome of the disputes arising from a contract. *See Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings, Inc.*, 129 Fed.Appx. 45, 51-52 (5th Cir. 2005) (citing *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 250 (5th Cir. 2001)).

Under Article 3540, a choice of law provision is presumed valid and enforceable until the provision is proven invalid. Louisiana courts typically will not invalidate a choice of law provision agreed upon between parties unless the chosen law violates a strong public policy of the state. *See Curtis Callais Welding, Inc.*, 129 Fed.Appx. at 52 (citation omitted). Courts favor and tend to uphold choice of law provisions in contracts, particularly when such provisions are used in interstate transactions. *See Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d

40

1049, 1058 (5th Cir. 1982). However, as discussed herein, the drafts contain two different forum selection clauses and choice of law provisions and no written agreement was executed. No evidence establishes either party agreed to a choice of law provision. Thus, the Court looks to Louisiana's residual choice of law rule.

Louisiana Civil Code article 3515 provides the residual choice-of-law rule: "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515. In determining which state's policies would be "most seriously impaired," courts are instructed to consider "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." *Id.*

In making this determination, the first question asked by Louisiana courts is whether there is a true or false conflict of interest. *Markel American Ins. Co. v. Cockrell*, 2008 WL 314368, at *1 (Feb. 4, 2008) (citing *Arceneaux v. Amstar Corp.,* 921 So.2d 189, 191 (La.App. 4th Cir. 2005)). A false conflict exists when only a single state has an interest in the application of its law and the other state involved has no real interest. *Id.* The Court must first determine whether there is a "true conflict" between the laws of the interested jurisdictions. *See Champagne v. Ward,* 893 So.2d 773, 786 (La. 2005); *Schneider Nat'l Transp. v. Ford Motor Co.,* 280 F.3d 532, 536 (5th Cir. 2002).

41

For breach of contract claims, this Court has found Delaware and Louisiana law present no true conflict, stating:

> "Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) breach of that obligation by the defendant; and (3) resulting damage to plaintiff." *H-M Wexford LLC v. Encorp, Inc.* 832 A.2d 129, 140 (Del. Ch. 2003). "Under Louisiana law, '[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.' " *Boudreaux v. Flagstar Bank FSB*, 623 Fed.Appx. 235, 237 (5th Cir. 2015) (quoting *Favrot v. Favrot*, 68 So.3d 1099, 1108–09 (La. Ct. App. 2011)). See 28 U.S.C. § 1332(a)(1). As these two laws are substantially similar, there is no conflict between them and the Court need not undertake a choice-of-law analysis. *R.R. Mgmt. Co.v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005). Thus, this Court will apply the forum law of Louisiana in addressing the issues before the Court.

*Three Peas in A Pod, LLC v. ABABY, Inc.*, CV 6:15-02296, 2016 WL 5854550, at *3 (W.D. La. Oct. 6, 2016). Here, Louisiana law should apply.

Even if a true conflict of laws were present, under Louisiana law, "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue." La. Civ. Code art. 3537. Article 3537 outlines additional factors that must be considered, specifically:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties;
>
> (2) the nature, type, and purpose of the contract; and
>
> (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

42

La. Civ. Code art. 3537.

The parties dispute whether, when, and where the alleged contract was negotiated, formed, and executed. The only relationship Delaware has to this case is that Defendants are incorporated there. Delaware certainly has an interest in protected its citizens. However, no negotiation, formation, or execution is alleged to have occurred in Delaware. The Court is directed to no evidence suggesting that Delaware has any more significant relationship with the alleged contract claim than Louisiana. And the location of the object and performance of the alleged contract is in Louisiana.

Here, Louisiana has the most significant relationship to the substantive issues to be resolved and Louisiana's interest would most seriously be impaired by failing to apply Louisiana law. Applying Louisiana's choice of law provisions and considering the contacts between the states and the parties, the transaction at issue, the location of the object of the contract, and the domicile of the parties, the Court finds Louisiana law governs CAM's claims.

### H.    CAM's proposed amendment should be granted.

Fed. R. Civ. P. 15(a)(1) provides that:

> a party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, the party may amend within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P.

15(a)(2).  A court should freely give leave when justice so requires.  Fed. R. Civ. P. 15(a)(2).

A district court "acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)).

Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted).  Here, CAM timely seeks to amend the original Complaint (ECF No. 1).  And Defendants did not oppose.  Because no relevant factors are present, leave should be granted allowing CAM's proposed amendment.

## I.    CAM's allegations must raise a plausible right to relief.

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted."[5]  But a complaint should not be dismissed "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted).

---

[5] And Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

A complaint or claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and quotation omitted). Factual allegations need not be detailed but must "raise a right to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

In deciding a motion to dismiss, a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Id.* at 496. However, a court need not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arnold*, 979 F.3d at 266 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal citation and quotation omitted)).

**J.**   **CAM states plausible claims for breach of contract and detrimental reliance against Rockwall.**

Defendants argue the face of the Complaint fails to state a cause of action for either breach of contract or for detrimental reliance. ECF No. 15-1 at 28. Defendants argue that Delaware law applies, which is clear that both claims should be dismissed.[6]   *Id.*   Citing Delaware statute of frauds, Defendants argue CAM cannot maintain a claim for breach of an unsigned agreement where the contract is not one that can be fully performed within a year. *Id.* (citing Del. Code. Tit. 6, Sec. 2714(a) (contract for performance for a period over one-year must be contained in a signed, written agreement). Also, citing Delaware law on the elements of

---

[6] Defendants seek dismissal of Pratt Industries, Inc. at a minimum based on their assertion it was not a party to the transaction. ECF No. 15-1 at 28 n.7. However, this issue does not need to be addressed as the Court finds that Pratt Industries, Inc. should be dismissed without prejudice for lack of personal jurisdiction as discussed herein.

promissory estoppel, Defendants argue CAM knowingly proceeded at its own risk in allegedly entering into the warehouse lease before sending a draft agreement to Rockwall.  ECF No. 15-1 at 29.  Defendants contend CAM could not have reasonably relied on an opinion, expectation, or assumption of a relationship with an initial three-year term.  *Id.* at 29-30.

CAM argues the parties reached an agreement on the fundamental terms of the three-year contract but had not agreed on other provisions such as choice of law or venue.  ECF No. 34 at 31.  CAM further argues Defendants analyze their claims under the wrong law, and that Louisiana law applies.  ECF No. 34 at 32, 35.  CAM asserts that even if Delaware law applies, there is evidence of actual performance which takes a contract out of the provisions of Delaware's statute of frauds.  *Id.* at 36.  CAM further contends its reliance on the promises, representations, and award of the three-year alleged contract was not unreasonable, and that Defendants' representatives assisted in securing the warehouse lease.  ECF Nos. 34 at 37, 34-1 at 5-7.  CAM asserts the parties clearly contemplated a three-year term, and that this was not reliance on the expression of an opinion. ECF No. 34 at 37.

As discussed herein, the Court applies Louisiana law in reviewing CAM's claims.  CAM's allegations and causes of action are premised on an alleged Agreement; Defendants anticipatory breach of the Agreement (and now alleged breach) on the basis that Defendants desired to no longer pay them or use their warehousing services before their alleged three-year term ended; and CAM's detrimental reliance on the Agreement.

Under Louisiana law, a contract is formed by the consent of the parties established through offer and acceptance. La. Civ. Code art. 1927. And unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction clearly indicative of consent. *Id.*

Louisiana courts have long "recognized that an anticipatory breach of contract is actionable." *Andrew Dev. Corp. v. W. Esplanade Corp.*, 347 So. 2d 210, 212 (La. 1977); *see also* La. Civ. Code arts. 1911-1913. The doctrine "applies when an obligor announces he will not perform an obligation which is due sometime in the future." *Latter & Blum, Inc. v. Ditta*, 223 So.3d 54, 59-60 (La. App. 4 Cir. 2017) (quoting *Fertel v. Brooks*, 832 So. 2d 297, 305 (La. App. 4 Cir. 2002)); *see also Shell Offshore, Inc. v. Marr,* 916 F.2d 1040, 1049 (1990) (citing *Lewis v. Gary,* 439 So.2d 1236 (La.Ct.App.1983) ("An anticipatory breach occurs and is actionable when, prior to the time performance is due, the obligor manifests unwillingness to perform his obligation.")). "Under those circumstances, 'the obligee need not wait until the obligor fails to perform for the contract to be considered in breach.'" *Latter & Blum, Inc.*, 223 So.3d at 59-60 (quoting *Fertel*, 832 So. 2d at 305); *see also* 6 *Louisiana Civil Law Treatise, Law of Obligations* § 1.19 (2d ed. 2018) ("The failure to perform in all such cases consists in destruction by the obligor of the obligee's expectation of receiving the performance owed to him, a failure that the obligee may regard as absolute because it outrightly violates the overriding obligation of good faith.").

47

"The principal thesis of this doctrine is that an obligee has a cause of action when an obligor's acts or omissions reduce his ability to execute, or signify his intent to repudiate, a contractual obligation." *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 Fed.Appx. 434, 438 (5th Cir. 2011) (quoting *Fairfield Dev. Co. v. Jackson*, 438 So.2d 664, 671 (La. App. 2 Cir. 1983)).  "Where a party refuses and does not merely fail or neglect to comply with his contractual obligation, his refusal constitutes an active breach of the contract, which relieves the other party of the obligation of continuing to perform under the contract." *Sporting Land, L.L.C. v. CHC Energy, L.L.C.*, CIV. A. 07-1692, 2007 WL 4124537, at *5 (W.D. La. Nov. 19, 2007) (citations omitted).

A plaintiff must assert the following elements to constitute a breach of contract claim: "(1) defendants owed them an obligation; (2) defendants failed to perform that obligation; and (3) defendants' failure resulted in damages to the plaintiffs." *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC*, 193 So.3d 1110, 1115 citing 2 Saul Litvinoff, *La. Civ. Law Treatise: the Law of Obligations* 378-87 (1975); Louisiana Civil Code article 1994; *Favrot v. Favrot*, 68 So.3d 1099, 1108-09 (La. App. 4 Cir. 2/9/11); *see also IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) ("In Louisiana, a breach of contract claim has three essential elements: (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee.").

48

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must point towards a specific contractual provision that was breached in order to state a valid claim. *See Thomas Clements v. Hancock Whitney Bank, By Merger with MidSouth Bancorp*, 2020 WL 7405656 at *2-3 (W.D. La. Nov. 23, 2020) (citing *Whitney Bank v. SMI Cos. Global, Inc.*, 949 F.3d 196, 205 (5th Cir. 2020)).

Louisiana allows parties to enter into an oral contract, and the oral contract (when its value exceeds $500.00) will be enforced when a party can prove the existence of the contract with "at least one witness and other corroborating circumstances." La. Civ. Code Art. 1846. The plaintiff may serve as the witness to establish the existence of an oral contract. *Smith v. Dishman & Bennett Speciality Co.,* 35,682 (La. App. 2 Cir. 1/23/02), 805 So.2d 1220. The other corroborating circumstances need only be general in nature, however, that evidence must come from a source other than the plaintiff. *See Arrowhead Contractors, Inc. v. Vegitation Management Specialists, Inc.*, 2006 WL 3792663, at *3 (W.D. La. Dec. 22, 2006) (citing *Suire v. Lafayette City–Parish Consol. Gov't,* 04–1459, 1460, 1466 (La. 4/12/05), 907 So.2d 37). "The 'other corroborating evidence' need only be general in nature; independent proof of every detail of the agreement is not required." *Id.* (citation omitted).

Under Louisiana law, the elements of a cause of action for detrimental reliance are: (1) a promise made; (2) by one who knows or has reason to know; (3) that the promise will induce the other party to rely; (4) to his detriment; (5) provided the reliance is reasonable. *Condrey v. SunTrust Bank of Georgia,* 429 F.3d

556, 565 (5th Cir. 2005) (citing La. Civ. Code art. 1967). The doctrine of detrimental reliance is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence," and usually functions in the absence of an enforceable written contract between the parties. *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004) (internal quotations omitted). To prevail, the plaintiff must show: (1) a representation by conduct or word; (2) reasonable reliance thereon; and (3) a detrimental change in position due to this reliance. *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So.2d 37, 37 (La. 2005). The primary inquiry is "not whether the parties intended to perform, but . . . whether a representation was made in such a manner that the promisor should have expected the promise to rely on it." *Id.* Louisiana law disfavors such claims, and courts must scrutinize them carefully. *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007).

Here, CAM alleges promises, representations, and an award of a three-year contract were made prior to CAM entering into a lease agreement for warehousing services for the same three-year term. ECF Nos. 1 at 3-9, 38-2 at 1-7. CAM asserts the parties agreed to the terms, specifically Rockwall's need for the three-year lease term as part of the contract. *Id.* CAM alleges Rockwall breached the three-year contract by its announcement that it would no longer honor its obligations on May 1, 2020. ECF No. 1 at 8. CAM asserts it suffered damages including monthly payments due by Rockwall to CAM for the remaining term of the contract through

December 2020. ECF Nos. 1 at 8, 38-2 at 1-7.  Shea attests to CAM's assertions. ECF No. 34-1.

CAM further alleges that, absent a contractual relationship, CAM detrimentally relied upon Defendants' representations that the award required a three-year warehousing lease.   Based on Rockwall's representations, CAM maintains that CAM entered a three-year lease with Rockwall's assistance, outfitted the leased premises, and secured equipment to provide services for Rockwall for three years.  ECF No. 1 at 8-9.  And CAM asserts that based on its detrimental reliance, it will suffer damages including the remainder of lease payments, prorated expenses for outfitting the premises and securing equipment, as well as out of pocket expenses. ECF No. 1 at 9.  ECF No. 34-1 at 1.

CAM must only include factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  And the Court must construe the facts in the light most favorable to CAM.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 572.  On that basis, CAM has alleged sufficient facts to support claims for anticipatory breach of contract and detrimental reliance.[7]  To the extent Defendants seek dismissal under Rule 12(b)(6), Defendants' motion (ECF No. 15) should be DENIED IN PART.

## III.   Conclusion

Because the Court lacks general personal jurisdiction over all Defendants and because the Court lacks specific personal jurisdiction over Pratt Industries,

---

[7] This action was filed prior to the expiration of the alleged contract and prior to Defendants' alleged breach.  Presumably CAM's claims are now for breach of contract and detrimental reliance.

Inc., IT IS RECOMMENDED that Defendants' Motion to Dismiss (ECF No. 15) be GRANTED IN PART to the extent Defendants seek dismissal for lack of personal jurisdiction over Pratt Industries, Inc.

Because the Court has diversity jurisdiction; because the Court has specific personal jurisdiction over Rockwall only; because venue is proper; IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss (ECF No. 15) be DENIED IN PART to the extent they assert lack of subject matter jurisdiction, lack of personal jurisdiction over Rockwall, improper venue.

Because transfer to Delaware under 28 U.S.C. § 1404(a) is unwarranted, IT IS FURTHER RECOMMENDED that Defendants' alternative Motion to Transfer (ECF No. 15) be DENIED.

Because Louisiana choice of law rules and Louisiana law govern CAM's claims and because CAM states plausible claims for breach of contract and detrimental reliance against Rockwall, IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss (ECF No. 15) be DENIED IN PART to the extent Defendants seek dismissal for failure to state a claim for relief.

Because CAM timely seeks to amend, because Defendants did not oppose, and because no relevant factors are present; IT IS FURTHER RECOMMENDED that CAM's Motion to Amend (ECF No. 38) be GRANTED allowing CAM's proposed amendment (ECF No. 38-2).

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar

days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 11th day of August 2021.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE