UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

---

CAM LOGISTICS, L.L.C.                                   CASE NO. 1:20-cv-445

-vs-                                                    JUDGE DRELL

PRATT INDUSTRIES, INC. *ET AL.*          MAGISTRATE JUDGE PEREZ-MONTES

---

## RULING

Before the court is a motion for summary judgment, (Doc. 103), filed by Defendant Pratt (Rockwall Corrugating), L.L.C. ("Rockwall"). Rockwall contends there are no genuine disputes with respect to: (1) whether the parties sought and contemplated their relationship to be memorialized in an agreed upon written agreement, executed, approved, and assented to by both parties in compliance with the parties' respective corporate and legal requirements; (2) whether, in the absence of a meeting of the minds and contemplated written and executed document, an agreement with a fixed-term existed; and (3) in the absence of a meeting of the minds and contemplated written and executed document, CAM Logistics' ("CAM") reliance on a fixed-term agreement was neither justified nor reasonable. For the reasons outlined below, we will **GRANT** the motion for summary judgment.

**I.    BACKGROUND**

The factual background of this matter was expounded upon in our October 26, 2022 memorandum ruling denying CAM's partial motion for summary judgment. Rather than recount those facts, we will simply adopt them and present the procedural background from that time forward.

1

In our memorandum ruling, we denied CAM's July 25, 2022 motion for partial summary judgment where it sought a determination that Rockwall breached the three-year contact for warehouse services. We noted that "[w]hile the evidence in the record suggests that the parties intended to be bound formally by written and signed agreements, that did not happen, and both parties acknowledge this failing." (Doc. 89, p.8). Additionally, we determined that while an oral contract existed between CAM and Rockwall, we could not determine whether the contract was breached as we did not know what, if any, term was established in the oral contract. (Doc. 89, p.12-13).

Rockwall has now filed the instant motion for summary judgment and memorandum setting forth several arguments. Rockwall first contends the parties always intended their agreement would be reduced to writing and executed; yet, a written contract was never completed, much less executed. As such, La.C.C. art 1947 presumes there was never a contract, and here, that means there was never a contract providing for a three-year term. Rockwall further asserts that the oral contract never contained a term. In support it cites the fact Rockwall continued to reject CAM's attempts to put a purchase order in place and the parties continued negotiations by sending drafts back and forth to each other that contained essential terms of the contract. Finally, Rockwall argues that CAM's detrimental reliance claim fails since a party cannot rely upon either an unexecuted agreement or a verbal negotiation when both parties contemplated a written contract.

In response, CAM has filed its opposition arguing that Rockwall's payment for warehousing services constituted tacit acceptance because performance is sufficient to overcome the presumption of Article 1947. Additionally, CAM argues that it reasonably relied on Rockwall's numerous assurances and actions supporting a three-year term for the contact as that time frame was agreed upon throughout negotiations.

II.  **SUMMARY JUDGMENT STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is twofold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law. Id.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. Liberty Lobby, 477 U.S. at 250. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Id. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to her, is sufficient to enable a reasonable jury to render a verdict in her favor. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986)). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations in the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312 (citing Liberty Lobby, 477 U.S. at 247).

When ruling on a motion for summary judgment, it is improper for a court to make a credibility determination or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). A court must also view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. Clift v. Clift, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine dispute of material fact exists when the evidence would allow for a reasonable trier of fact to return a verdict for the nonmovant. Renfroe v. Parker, 974 F.3d 594, 599 (5th Cir. 2020) (citing Austin v. Kroger Tex., L.P., 864 F.3d 326, 328 (5th Cir. 2017)).

### III. LAW & ANALYSIS

Following our prior ruling, the parties are still at odds as to whether we determined the applicability of Louisiana Civil Code Article 1947 to the proposed written agreement.

Article 1947 provides: "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in this form." This has long been the law in Louisiana. In Fredericks v. Fasnacht, 30 La.Ann. 117 (1878), the Louisiana Supreme Court stated:

> It is elementary in our law, that where negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended; the contract is inchoate, incomplete, and it can not be enforced until it is signed by all the parties.

Id. (Citations omitted). The court has continued to reiterate this sentiment. In Breaux Bros. Const. Co v. Associated Contractors, 77 So.2d 17 (La. 1954) the Louisiana Supreme Court held:

> Since the parties in the instant case intended from the beginning to reduce their negotiations to a written contract, neither the plaintiff nor the defendant was bound until the contract was reduced to writing and signed by them. Therefore, even if all of the terms of the alleged contract between plaintiff and defendant had been verbally agreed upon, no valid contract would have existed between the parties because this case falls within the second class of cases discussed in <u>Fredericks v. Fasnacht</u>, [30 La.Ann 117] and therefore in this case the final consent of the parties was suspended until such time as the contract should be reduced to writing and signed by all the parties.

<u>Id.</u> See also <u>Johnston v. Johnston</u>, 469 So.2d 31, 32 (La.App. 1 Cir. 1985) ("Even if all terms of the alleged contract have been verbally agreed upon, so long as it is a part of the bargain that the contract be reduced to writing, no valid contract exists until it is reduced to writing.").

To be clear, we did decide in our prior ruling that the parties bargained for a written contract; thus, La.C.C. art 1947 and its presumption that the parties were not bound without a written, executed contract, applied to this case. (Doc. 75-1, 77, 103). Rockwall required a written contract which had to be approved by its legal department as well as approved and signed by its Chief Financial Officer or other designee. (Doc. 103-5). CAM wanted the written contract so it could protect itself from what it deemed significant risks. Thus, it engaged the services of an attorney to draft the agreement; something they had not done previously. (Docs. 103-5, 103-18).

The parties exchanged drafts of the agreement, but as of December 2017, they had not come to a final agreement. This was of concern to CAM who wanted to be sure that it was ready to provide warehouse services for the presumptive January 2018 start date of the contract. Accordingly, CAM proceeded to meet with the England Authority on or about December 6, 2017 to discuss a three-year lease of warehouse space.

Shea reached out to Richard Turner, Strategic Account Manager with Pratt Industries on December 19, 2017, and told him about problems CAM faced in negotiating a lease with the England Authority. In response, Turner told Shea he could tell the England Authority that: (1)

5

P&G has made a business award to Pratt Industries; (2) Pratt selected CAM to provide warehousing services in Alexandria as it was the best solution for P&G and Plastipak; (3) Pratt already supplies the P&G Alex site with product and had done so since 2012; and (4) all parties anticipated a long term relationship, with the initial term being 3 years.[1] (Doc. 110-7).

After Shea secured the terms of the lease with the England Authority, he reached out to Batts by email. Shea informed Batts that he needed to sign the lease agreement, so he asked Batts to issue a purchase order for the price of the three-year contract. Batts in no uncertain terms told Shea that he did not have authority to execute such a purchase order, and that it would have to come through the legal department. Nevertheless, even without a guarantee from Rockwall, CAM signed the lease with the England Authority, advised Rockwall of the same, and began to provide warehouse services on or about January 11, 2018.

From October 2017 to April 2018, the parties continued to exchange drafts of the written agreement. And it was during this time that the parties entered into an oral agreement for warehouse services. CAM argues that by operating under this oral agreement, Rockwall tacitly accepted the terms of the written contract. There are several flaws to CAM's argument. First, CAM does not wish to accept the entirety of the written agreement, only the three-year term, and we have already stated that we cannot allow the parties to cherry pick provisions they wish to enforce. Second, the terms of the oral contract don't match all of the specifications of the superseded three-year contract. Although the parties negotiated a price increase over the course of the proposed three-year term, there was never an increase in price presented to Rockwall on any of the invoices submitted over the 28 months. Finally, and most importantly, we do not find the

---

[1] There is no indication that Batts or anyone else from Rockwall were aware of this conversation.

cases cited by CAM for the proposition of performance constituting tacit acceptance apply to this case.[2]

Among the cases upon which CAM relies is the unpublished recitation of conclusions of fact and conclusion of law set forth in Sealevel Const., Inc. v. Westcoast Corp., No. CIV.A. 12-874, 2014 WL 3587264 (ED La. July 18, 2014). Therein, the court cites Meyer v. Burger King, 618 So.2d 1123, 1126 (La.App. 4 Cir.1993), for the proposition that the presumption in Article 1947 "may be rebutted by performance. Id. at *7. First, we are not bound by this case or its recitation of conclusions of fact and law. Second, we find the reliance upon Burger King misplaced.

In Burger King, Parkway Construction Company ("Parkway") and Burger King entered into a contract to renovate one of its restaurants. Parkway's employee, Alfred "Pete" Myers, was injured during renovations by a heavy menu board that fell on him. Myers filed a personal injury suit against Burger King who then filed a third-party claim against Parkway and its insurers alleging breach of contract. The breach of contract claim arose out of the fact Parkway did not arrange for the naming of Burger King as an additional insured on Parkway's insurance policy despite its agreement in the contract to do so. In response, Parkway alleges the contract was invalid under La.C.C. Art. 1947 because Burger King's representative did not sign the contract as a witness (and not as a principal) even though there was a proposed contract provision stating this was to be done. The contract was executed by Parkway's president and Burger King's Vice President of Architecture and Engineering Id. at 1125. It was just missing a witness to the Burger

---

[2] CAM cites the unreported case of Iheanacho v. Air Liquide Large Industries, 2020 WL 3451689, at *3 for the proposition that "even when the parties contemplate a signed document, when they begin to perform the contract *sans* signatures, any presumption that signatures are required is rebutted. However, the court in Iheanacho never discussed the applicability of La.C.C. Art. 1947 to the arbitration agreement at issue, much less whether the presumption was overcome.

7

King Vice President's Signature. Thus, the question before the court was whether the failure to witness the signing, as provided for in the terms of the contract, rendered it unenforceable pursuant to Article 1947. The Louisiana Fourth Circuit Court of Appeal found that the word "form" in Article 1947 meant written form, so the lack of a witness to a contract did not invalidate the contract where performance had begun.

Unlike the case at hand, the contract in Burger King lacked a witness' signature to an otherwise fully executed contract, so we find the cases factually distinguishable. Additionally and more importantly, we do not believe the Louisiana Fourth Circuit Court of Appeal's pronouncement to be law. We have failed to find any Louisiana state court cases citing to Burger King for this proposition[3], and the Louisiana state law cases we have found analyzing Article 1947 involved parties who had not bargained for a certain form.[4] Therefore, these courts determined Article 1947 was inapplicable, so they did not examine whether performance rebutted the presumption that the parties were not bound. We also failed to locate any Civil Code articles, revised statutes, or other legislative intentions that addressed this purported rebuttable presumption via performance. As neither legislation nor custom support the proposition, we do not find that performance constitutes tacit acceptance of an unsigned, unfurnished, written contract.

---

[3] The cases citing Burger King are out of Louisiana federal courts and their citation to the case is as conclusory as the Fourth Circuit Court of Appeal's.

[4] See Dickerson v. Cajun Communications of Texas, Inc., 910 So.2d 477 (La.App. 2 Cir. 2005) (Second Circuit Court of Appeal noted the existence of a letter of intent and found the parties did not intend to be bound only by a subsequent document despite the statement a subsequent agreement would follow); Enterprise Property Grocery, Inc. v. Selma, Inc., 882 So.2d 652 (La.App. 2 Cir. 2004) (Case involving a lease agreement drafted by the lessor, signed by the lessee, but never signed by the lessor. Lessor attempted to claim the lease was invalid by the court found that a least is valid and binding upon the lessee's acceptance, even if the lessor fails to sign).

Accordingly, the parties were never bound by any of the terms the terms of the proposed written contract.[5]

In addition to tacit acceptance, CAM argues that Rockwall confirmed or ratified the three-year contract. "Confirmation is a declaration whereby a person cures the relative nullity of an obligation. An express act of confirmation must contain or identify the substance of the obligation and evidence the intention to cure the relative nullity. Tacit confirmation may result from voluntary performance of the obligation." La.C.C. Art. 1842. "A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed. Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative." La.C.C. Art. 2031. CAM has the burden of establishing that the contract here is a relative nullity, and it has not done so. There is no indication Batts lacked capacity or did not give free consent. In fact, Batts repeatedly stated that he lacked capacity to enter the proposed three-year contract. Also, no one has alleged that Batts lacked authority or capacity to enter into the oral contract which we found to exist. As long as the oral contract is valid, and we have no reason to opine otherwise, there is no contract to confirm.

"Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority. An express act of ratification must evidence the intention to be bound by the ratified obligation. Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that

---

[5] CAM also cited a number of cases which it purports to stand for acceptance of a contract through the making or accepting of payments. None of the cited cases are on point as the parties did not negotiate for a written contract. Also, several of the cited cases dealt with ratification of an agent's conduct by a principal, which did not happen in the instant case as explained *infra*.

9

obligation." La.C.C. Art. 1843. CAM cannot benefit from ratification as there was no agent who entered into a contract without authority. Again, Batts never entered into the proposed three-year contract with CAM in the first place. He always stated he needed the authority of the legal department and/or the Chief Financial Officer. Such authority was never forthcoming. There are neither allegations nor evidence establishing Batts was without authority to enter into an oral monthly agreement for warehouse services. Without evidence of Batts overstepping his authority, the oral contract remained valid and enforceable, and there is nothing to ratify.

We now turn to whether the valid oral contract whereby Rockwall obligated itself to pay monthly service fees to CAM for warehousing services contained a specified duration for performance and completion. At the time of our prior ruling, we were unable to determine if a time period existed for that oral contract, and if it did, whether it was three-years. CAM argues that we are still without sufficient evidence to make that determination as the evidence before the court has not changed. Although the evidence may not have changed, the opportunity for the court to address the matter has changed as we have now had the opportunity to decide whether performance constitutes tacit acceptance, or the parties were somehow able to enforce the terms from the proposed written contract. Now that we have made the determination that the proposed written contract and its terms are unenforceable, we can definitively say that CAM cannot cherry pick the three-year term from the ashes of unexecuted draft contract form to accept it as the duration of the oral contract.

The fact a three-year term for performance was and is not part of the terms of the oral contract is further evidenced by CAM's own invoicing entitled "ALEXANDRIA WAREHOUSE MONTHLY CHARGES." Every month CAM submitted an invoice, and Rockwall paid that invoice during the month services were rendered. There was never an increase in the amount billed

despite the fact such was contemplated under the terms of the proposed three-year written contract. The parties operated on a monthly basis, so it would reason that a one months' notice to terminate the warehousing agreement was reasonable under the circumstances. Even if the oral contract had no specified term of performance, La.C.C. Art. 2024 provides that "[a] contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party." Such was effected by Rockwall when they notified CAM in writing, more than a month in advance that it would not longer require CAM's services. Accordingly, CAM's claims for breach of contract lack merit and will be dismissed.

Finally, we turn to CAM's claim for detrimental reliance. "[T]he basis of detrimental reliance is 'the idea that a person should not harm another person by making promises that he will not keep.'" Suire v. Lafayette City-Parish Consol. Gov't, 907 So.2d 37, 59 (La. 2005) (Citation omitted). CAM has not and cannot establish that there was a three-year term for the oral contract between it and Rockwell, and we do not find that CAM was reasonable in believing such a term existed.

> Louisiana Civil Code Article 1967 provides:
>
> A party may be obligated by promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

To establish a claim for detrimental reliance, CAM must establish by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Suire v. Lafayette City-Parish Consol. Gov't, 907 So.2d 37, (La. 2005).

11

It is undisputed that the parties intended to be bound by a written contract, and the parties were still negotiating the terms of that contract when they entered into the oral agreement. CAM, via Shea, took the sole risk of entering into an actual three-year lease with the England Authority, completely disregarding Batts' repeated statements that he could not enter into a contract, including the purchase order, without the approval of Rockwall's legal department. At no time in the formation of the oral contract did Rockwall promise CAM a three-year term for warehousing services. Rather, occupancy of the space was seen as a temporary arrangement while the parties confected the written contract. Simply put, there was never a promise by Rockwall for anything. In fact, if anyone made a promise of a three-year contract but failed to follow through, it was CAM who simply failed to execute the written agreement or continue negotiations.

Given Batts' consistent statements regarding a lack of authority to enter into a long-term contract, as well as the parties' arrangement for monthly warehousing services, we do not find it was reasonable for CAM to have believed that it had entered into a three-year contract for warehousing services. Therefore, CAM's claim for detrimental reliance will be dismissed.

## IV. CONCLUSION

In light of the foregoing, Rockwall's motion for summary judgment will be granted. A judgment in conformity with these findings will be issued this date.

THUS DONE AND SIGNED at Alexandria, Louisiana this 21st day of March 2024.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT